# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **NATURAL RESOURCES WORLDWIDE L L C** | **CASE NO.  6:25-CV-01441** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **AMERICAN PANTHER L L C** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Transfer Venue filed by Defendant, American Panther, LLC ("AmPan"). (Rec. Doc. 15).  Plaintiff, Natural Resources Worldwide, LLC ("NRW"), opposed the motion (Rec. Doc. 20), and AmPan replied. (Rec. Doc. 23). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that AmPan's motion be granted.

## Facts and Procedural History

NRW filed the present action on September 28, 2025, against AmPan seeking "declaratory judgment, a temporary restraining order, a preliminary and permanent injunction, and damages arising from AmPan's breach of contract and violation of federal law." (Rec. Doc 1, ¶ 1).  Per the Complaint, NRW owns wells, platforms,

and associated facilities in federal blocks on the Outer Continental Shelf off the coast of Louisiana for oil and gas production. (*Id*. at ¶ 6). NRW entered into four contracts with AmPan related to two separate pipelines to transport the oil and gas produced onshore for sale. (*Id*. at ¶¶ 7-8). Specifically, the parties entered into a Throughput and Deficiency Agreement dated June 12, 2024 (the "T&D Agreement"). (*Id*. at ¶ 10). Per NRW, under the T&D Agreement, AmPan is obligated to transport NRW's crude oil production through the Tiger Shoals and Eugene Island Pipelines. (*Id*. at ¶ 11).

NRW maintains that AmPan "has kept the Tiger Shoals Pipeline improperly closed for months" and refuses to finalize new contracts to reopen the Tiger Shoals Pipeline "unless NRW accedes to onerous terms that violate federal law mandates of open and nondiscriminatory access to pipelines governed by [the Outer Continental Shelf Lands Act] and the Federal Energy Regulatory Commission ("FERC"). (*Id*. at ¶¶ 12-14). Accordingly, on September 25, 2025, NRW issued a demand letter demanding that AmPan open the Tiger Shoals Pipeline at applicable FERC-filed tariff rates. (Rec. Doc. 1, ¶ 15). Per NRW, AmPan responded by shutting in the Eugene Island Pipeline thereby breaching their contract and violating federal law. (*Id*. at ¶¶ 16-34).

AmPan urges the Court to transfer this matter to the Northern District of Texas, Fort Worth Division pursuant to the parties' forum selection clause in the

T&D Agreement. (Rec. Doc. 15). Per AmPan, "AmPan and NRW are parties to the T&D Agreement and the ILI Reimbursement Agreement, dated June 12, 2024, by and between AmPan and NRW (as amended by the First Amendment to ILI Reimbursement Agreement, dated November 5, 2024, by and between AmPan and NRW, the 'ILI Reimbursement Agreement')." (Rec. Doc. 15-1, p. 2). These agreements authorize NRW to transport its crude petroleum on AmPan's offshore pipelines in exchange for certain fees and reimbursements that NRW is required to pay to AmPan. (*Id*.). AmPan alleges NRW has regularly failed to pay fees and reimbursements it owes under the T&D Agreement and the ILI Reimbursement Agreement. (*Id*.). To that end, AmPan filed suit in the 67th Judicial District Court in Tarrant County, Texas, which was later removed to the United States District Court for the Northern District of Texas, Fort Worth Division[1], seeking damages in excess of $4 million for NRW's alleged breaches of the parties' contracts. (*Id*.).

In that case, NRW argued that the matter should be transferred to this Court. The parties' arguments and briefs in that matter are substantially the same as those in this matter. (Rec. Docs. 20-2 & 20-3). On December 1, 2025, the United States District Court for the Northern District of Texas, Fort Worth Division entered an Order transferring 4:25-cv-01264 for consolidation with this matter noting that this

---

[1] *American Panther, LLC, v. Natural Resources Worldwide, LLC*, 4:25-cv-01264.

3

Court "is considering a similar motion to transfer concerning a similar set of facts" and will "have the opportunity to comprehensively analyze which district should hold venue." (Rec. Doc. 23-1, p. 2). Notably, Texas did not rule on the merits of venue. The matter has since been transferred to this Court at 6:25-cv-01908.

NRW maintains that both matters should remain in this Court because (1) the jurisdiction of this suit is governed by the Outer Continental Shelf Lands Act ("OCSLA") which applies to the parties' oil and gas operations in the Outer Continental Shelf at issue here; (2) OCSLA invalidates the parties' forum selection clause; (3) the *Volkswagon* factors articulated by the Fifth Circuit favor the matters remaining in this Court; and (4) the first-filed lawsuit in this Court preempts the second-filed lawsuit in Texas. (Rec. Doc. 20-3, p. 6).

AmPan points to the forum selection clause contained in the parties' T&D Agreement:

> This Agreement shall be deemed to be a contract made under, and shall be construed in accordance with and governed by, the laws of the State of Texas, without regard to the principles of conflicts of law. The Parties submit to the exclusive jurisdiction in the state or federal courts located in Tarrant County, Texas.

(Rec. Doc. 15-1, pp. 3-4).

Per AmPan, "[u]nder the plain text of the T&D Agreement, NRW improperly filed suit in this district, and this action should be transferred to the United States District Court for the Northern District of Texas, Fort Worth Division." (*Id*. at p. 4).

4

## **Law and Analysis**

### I. **OCSLA**

NRW maintains that the parties' forum selection clause is inapplicable because the "jurisdiction of this suit is governed by [OCSLA]." (Rec. Doc. 20-3, p. 5). Per NRW, under OCSLA there are "only two available venues for the parties' dispute: (1) the Western District of Louisiana, which is directly adjacent to offshore operations at issue, or (2) the Southern District of Texas, where AmPan is located." (*Id*.).

This Court agrees that OCSLA governs jurisdiction in this case if the parties' dispute does indeed fall under OCSLA's purview. However, NRW appears to conflate jurisdiction and venue. Regarding jurisdiction, OCSLA provides:

> (1) Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, […] or in the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter.

43 U.S.C. § 1349(b)(1).

Accordingly, as district courts of the United States, both the Western District of Louisiana and the Northern District of Texas, Fort Worth Division have jurisdiction to hear this dispute under OCSLA. The question for this Court is which venue is appropriate for this dispute.

Per OCSLA's venue provision, "[p]roceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose." *Id*. NRW contends that the Southern District of Texas, where AmPan "may be found" or the Western District of Louisiana, the judicial district nearest to the place the cause of action arose, are the only available venues under OCSLA. (Rec. Doc. 20-3, p. 13). NRW argues that AmPan may only "be found" in Houston, Texas, where it has its principal place of business. (*Id*.). AmPan maintains that the Northern District of Texas, Fort Worth Division is also an available venue under OCSLA because AmPan is subject to personal jurisdiction in all Texas districts. (Rec. Doc. 23, p. 5). Accordingly, per AmPan, these matters can, and should, be transferred to the parties' contracted forum without running afoul of OCSLA. (*Id*.).

Courts have construed the language "may be found" as analogous to where a party is subject to personal jurisdiction. *Time, Inc. v. Manning*, 366 F.2d 690, 697–98 (5th Cir. 1966). There is no dispute that AmPan, whose principal place of business is in the state, is subjected to the personal jurisdiction of Texas. The Court also notes that in 6:25-cv-01908, where NRW is named as Defendant, the Northern District of Texas is an available venue under OCSLA because NRW's principal place of business is Dallas, Texas. (Rec. Doc. 1, ¶ 1). The Court thus rejects NRW's

6

argument that OSCLA invalidates the parties' forum selection clause as these matters could be transferred to the parties' contracted forum without running afoul of OCSLA.

## II. Forum Selection Clauses

A valid forum selection clause "represents the parties' agreement as to the most proper forum." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2012). 28 U.S.C. § 1404, which addresses change of venue based on convenience, provides the mechanism for the enforcement of forum selection clauses. *Id.* at 60.

When a motion to transfer venue involves a valid, mandatory forum selection clause, the court conducts a modified analysis under § 1404(a), giving the forum selection clause "controlling weight in all but the most exceptional cases." *Id.* at 51; *Weber v. PACT XXP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016). Only where a court finds a forum selection clause invalid, not mandatory, or that the dispute does not fall within the scope of the clause, will the court engage in a § 1404(a) inquiry. *Weber*, 811 F.3d at 767.

The Fifth Circuit applies "a 'strong presumption' in favor of enforcing mandatory forum-selection clauses. This presumption may be overcome by a clear showing that a forum-selection clause is 'unreasonable' under one of the following circumstances:

> (1) [T]he incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state."

*Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018)(internal footnotes omitted).

A forum selection clause is "prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995). NRW does not specifically challenge the parties' forum selection clause for any of the above reasons. Rather, it is NRW's position that the parties' forum selection clause directly contravenes OCSLA. For the reasons detailed above, the Court disagrees and finds that the parties' forum selection clause can be enforced without running afoul of OCSLA.

There is no evidence before the Court that this forum selection clause is otherwise invalid; accordingly, the Court will next examine whether it is mandatory. "A [forum selection clause] is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum-and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make a [forum selection clause] mandatory. *Weber*, 811 F.3d at 768 (citations omitted). The relevant portion of the forum selection clause in this case

8

provides: "[t]he Parties submit to the exclusive jurisdiction in the state or federal courts located in Tarrant County, Texas." (Rec. Doc. 15-1, pp. 3-4). The language of this clause clearly sets forth that the parties elected to submit to the "exclusive jurisdiction" of the courts located in Tarrant County, Texas. The Court finds this language sufficient to make the forum selection clause mandatory. Lastly, as this dispute revolves around the parties' various contracts and agreements, there is no evidence that the dispute does not fall within the scope of the forum selection clause contained in one such contract/agreement. Accordingly, the Court need not engage in a full § 1404(a) inquiry but will consider public interests. *See Weber*, 811 F.3d at 767; *see also Atlantic Marine*, 571 U.S. at 65-66.

The Fifth Circuit detailed the following public interest factors the Court must consider: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008). NRW concedes that the first factor is "likely neutral," but contends that the remaining factors favor this dispute remaining in the Western District of Louisiana. (Rec. Doc. 20-3, p. 17). Specifically, NRW maintains that (1) "there is a strong local interest in having a dispute arising from oil exploration off the coast of Louisiana to be adjudicated at

9

home in the Western District of Louisiana," (2) "[t]he Western District of Louisiana would have far greater familiarity with Louisiana law" which, per NRW, applies to the parties' disputes under OCSLA, and (3) "having this matter litigated in the Western District of Louisiana would avoid any inconsistencies and unnecessary problems, including the possibility of misinterpretation of Louisiana law by a court from another state." (*Id*. at p. 18).

AmPan counters "that there are no extraordinary circumstances relating to the public interest that militate in favor of vitiating the [p]arties' bargain." (Rec. Doc. 23, p. 6). Specifically, AmPan notes that "[b]oth parties maintain their principal places of business in Texas, and NRW is headquartered in the Northern District of Texas, giving that forum a localized interest in the case." (*Id*.). AmPan also contends that the "federal courts in Texas are capable of adjudicating" claims for breach of contract and declaratory judgment even if it is determined that Louisiana law applies. (*Id*).

Per the Supreme Court, "the party acting in violation of the forum-selection clause…must bear the burden of showing that public-interest factors *overwhelmingly* disfavor transfer." *Atlantic Marine*, 571 U.S. at 67 (emphasis added). The Court does not find the public-interest factors raised by NRW to overwhelmingly disfavor transfer. Indeed, the Supreme Court rejected one of the very arguments NRW made finding that "federal judges routinely apply the law of

10

a State other than the State in which they sit." *Id*. The Court also finds that both Courts have localized interests in the matters thereby neutralizing factor two. Accordingly, the Court finds that NRW has failed to meet its burden or demonstrate that the forum selection clause should not be enforced.

### III.     First to File Rule

Lastly, NRW relies on the first-to-file rule to maintain their earlier filed action in this Court. NRW filed the present action on September 28, 2025. (Rec. Doc. 1). AmPan filed their Original Petition against NRW in the 67th Judicial District Court, Tarrant County, Texas, on October 23, 2025 (Rec. Doc. 1-1 at 6:25-cv-01908), which was removed on November 9, 2025 (Rec. Doc. 1 at 6:25-cv-01908).

> Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. The rule rests on principles of comity and sound judicial administration. The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.

*Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir. 1999) (cleaned up). However, as the United States Court for the Eastern District of Louisiana aptly summarized:

> Courts in the Fifth Circuit have identified three compelling circumstances under which the first-to-file rule is not applicable, even if there is a substantial overlap of core issues or proof that would be adduced. First, the rule is disregarded under a "bad faith" exception when "a party engage[s] in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that he [may] file a preemptive

11

lawsuit." Second, the rule is disregarded under an "anticipatory filing" exception when "a party files a declaratory judgment action in anticipation of a suit by its adversary, which can create an opportunity for forum-shopping." Third, the rule is disregarded under a "forum selection clause" exception when such a clause is found to be valid and enforceable because to do otherwise "would encourage parties to rush to the courthouse to file lawsuits for the purpose of circumventing their agreed-upon promises."

*Cormeum Lab Servs., LLC v. Coastal Lab'ys, Inc.*, 2021 WL 5405219, at *3 (E.D. La. Jan. 15, 2021)(internal citations omitted). As discussed, the Court finds that the parties' forum selection clause is valid and enforceable; accordingly, the first-to-file rule is inapplicable.

## **Conclusion**

For the reasons discussed herein, the Court recommends that AmPan's Motion to Transfer Venue (Rec. Doc. 15) be GRANTED and this matter, as well as 6:25-CV-01908, be transferred to the Northern District of Texas, Fort Worth Division.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

12

fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 27th day of January, 2026.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE